| | |
|---|---|
| THE LIBERTARIAN PARTY OF VIRGINIA; JO JORGENSEN, Libertarian Party of Virginia Presidential Candidate; NICK DUNBAR, Chairman of the Libertarian Party of Virginia; THE CONSTITUTION PARTY OF VIRGINIA; JOHN BLOOM, Chairman of the Constitution Party of Virginia; SHEILA "SAMM" TITTLE, Constitution Party of Virginia Presidential candidate; MITCHELL BUPP, Independent candidate for U.S. House of Representatives; THE GREEN PARTY OF VIRGINIA; BECKER SIDNEY SMITH, Green Party of Virginia Presidential candidate and General Secretary of Green Party of Virginia; CHERI HONKALA, Green Party of Virginia Vice Presidential candidate; DIANNE BLAIS, Green Party of Virginia candidate for U.S. House of Representatives; THE INDEPENDENT GREEN PARTY OF VIRGINIA; CAREY CAMPBELL, Chairman of the Independent Green Party of Virginia; GLENDA GAIL PARKER, Independent Green Party of Virginia candidate for U.S. Senate; HARLAN WAHLERT, Independent Green Party of Virginia candidate for U.S. House of Representatives; DR. KATHERINE PETTIGREW, Independent Green Party of Virginia candidate for U.S. House of Representatives; RACHEL BATTS, Independent Green Party of Virginia candidate for U.S. House of Representatives; COL. ALBERT BURCHARD, Independent Green Party of Virginia Candidate for U.S. House of Representatives; AARON LYLES, Independent Green Party of Virginia Candidate for U.S. House of Representatives; PETER MARCHETTI, Independent Green Party of Virginia Candidate for U.S. House of Representatives; CAPT. RON FISHER, Independent Green Party of Virginia Candidate for U.S. House of Representatives; | **Case No. 3:20-cv-00349**<br><br>**FIRST AMENDED COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND OTHER RELIEF** |

JEREMIAH HEATON, Independent Green
Party of Virginia Candidate for U.S. House of
Representatives; TERRY MODGLIN;
Independent Green Party of Virginia,
Candidate for U.S. House of Representatives,

                    Plaintiffs,

v.

VIRGINIA STATE BOARD OF
ELECTIONS,

ROBERT H. BRINK, Chairman of the State
Board of Elections, in his official capacity,
JOHN O'BANNON, Vice-Chairman of the
State Board of Elections, in his official
capacity, JAMILAH D. LECRUISE,
Secretary of the State Board of Elections, in
her official capacity, CHRISTOPHER E.
"CHRIS" PIPER, Commissioner of the State
Board of Elections, in his official capacity,
JESSICA BOWMAN, Deputy Commissioner
of the State Board of Elections, in her official
capacity.

                    Defendants.

## INTRODUCTION

1.     Plaintiffs, The Libertarian Party of Virginia (LPVA), Jo Jorgensen, LPVA candidate for

U.S. President, Nick Dunbar, Chairman of the LPVA, The Constitution Party of Virginia (CPV),

John Bloom, Chairman of the CPV, Sheila "Samm" Tittle, CPV candidate for U.S. President,

Mitchell Bupp, independent candidate for U.S. House of Representatives, the Green Party of

Virginia (GPVA), Becker Sidney Smith, GPVA candidate for U.S. President and General Secretary of GPVA, Cheri Honkala, Green Party candidate for U.S. Vice President, and Dianne Blais, GPVA candidate for U.S. House of Representatives, The Independent Green Party of Virginia (IGPVA), Carey Campbell, Chairman of the IPGVA, Glenda Gail Parker, IGPVA candidate for U.S. Senate, Harlan Wahlert, IGPVA candidate for U.S. House of Representatives, Dr. Katherine Pettigrew, IGPVA candidate for U.S. House of Representatives, Rachel Batts, IGPVA candidate for U.S. House of Representatives, Col. Albert Burchard, IGPVA candidate for U.S. House of Representatives, Aaron Lyles, IGPVA candidate for U.S. House of Representatives, Peter Marchetti, IGPVA candidate for U.S. House of Representatives, Capt. Ron Fisher, IGPVA candidate for U.S. House of Representatives, Jeremiah Heaton, IGPVA candidate for U.S. House of Representatives, and Terry Modglin, IGPVA candidate for U.S. House of Representatives. by and through their counsel, Barnes Law, and pursuant to the First and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1983, state the following complaint for declaratory judgment and permanent, preliminary, and emergency injunctive relief against the Virginia Department of Elections, the Virginia State Board of Elections, its Chairman, Vice-Chairman, Secretary, Commissioner, and Deputy Commissioner to restrain Defendants, in this election only, from enforcing in full the independent candidate signature requirements for U.S. House of Representatives candidates codified at Va. Code § 24.2-506(2), U.S. Senate candidates codified at Va. Code § 24.2-506(1), and independent candidates for President and Vice President of the United States codified at Va. Code § 24.2-543.

## PARTIES

2.      Plaintiff The Libertarian Party of Virginia is a political party and the Virginia affiliate of the national Libertarian Party that seeks to have its candidates for U.S. President, U.S. Vice

President, and U.S. House of Representatives on the ballot for the 2020 general election. The LPVA began collecting petition signatures as soon as their petition form was approved in January, but has been completely prevented from gathering petition signatures since the shutdown began in March.

3.      Plaintiff Jo Jorgensen is the LPVA candidate for U.S. President, a petition circulator and voter.

4.      Plaintiff Nick Dunbar is the Chairman of the LPVA, a petition circulator, and wishes to vote for the LPVA's candidates in the 2020 general election.

5.      Plaintiff The Constitution Party of Virginia is an independent political party within the Commonwealth of Virginia that seeks to have its candidate for U.S. President on the ballot for the 2020 general election. The CPV has been completely prevented from gathering petition signatures since the shutdown began in March.

6.      Plaintiff John Bloom is the Chairman of the CPV, a petition circulator, and wishes to vote for the CPV's candidates in the 2020 general election.

7.      Plaintiff Sheila "Samm" Tittle is the CPV's candidate for U.S. President, a petition circulator, and voter. Ms. Tittle has been completely prevented from gathering petition signatures since the shutdown began in March.

8.      Plaintiff Mitchell P. Bupp ("Mr. Bupp") is an independent candidate for the U.S. House of Representatives in Virginia's 5th District. Mr. Bupp announced his candidacy in January and began gathering petition signatures at that time. Mr. Bupp has been completely prevented from gathering petition signatures since the shutdown began in March.

9.      Plaintiff Green Party of Virginia is a political party and the Virginia affiliate of the national Green Party that seeks to have its candidates for U.S. President, U.S. Vice President,

and U.S. House of Representatives on the ballot for the 2020 general election. The GPVA has successfully met the ballot access signature requirements for every candidate it has placed on the ballot for the past twelve years. The GPVA has been completely prevented from gathering petition signatures since the shutdown began in March.

10.     Plaintiff Becker Sidney Smith, General Secretary of GPVA, is a Virginia resident, a GPVA candidate for U.S. President, petition circulator and voter. Mr. Smith wishes to vote for the GPVA's candidates in the 2020 general election.

11.      Plaintiff Cheri Honkala is the GPVA candidate for U.S. Vice President, a petition circulator and voter. Ms. Honkala has been completely prevented from gathering petition signatures since the shutdown began in March.

12.     Plaintiff Dianne Blais is the GPVA candidate for U.S. House of Representatives in Virginia's 10th District, a Virginia resident, voter, and petition circulator. Ms. Blais has been completely prevented from gathering petition signatures since the shutdown began in March.

13.     Plaintiff The Independent Green Party of Virginia is an independent political party within the Commonwealth of Virginia that seeks to have its candidates for U.S. President, U.S. Vice President, U.S. House of Representatives, and U.S. Senate on the ballot for the 2020 general election.

14.     Plaintiff Carey Campbell is the Chairman of the IGPVA, a petition circulator, and wishes to vote for the IGPVA's candidates in the 2020 general election.

15.     Plaintiff Glenda Gail Parker is the IGPVA candidate for U.S. Senate, a Virginia resident, voter, and petition circulator. Ms. Parker has been completely prevented from gathering petition signatures since the shutdown began in March.

16.     Plaintiff Harlan Wahlert is the IGPVA candidate for U.S. House of Representatives in Virginia's 1st District, Virginia resident, voter, and petition circulator. Mr. Wahlert has been completely prevented from gathering petition signatures since the shutdown began in March.

17.     Plaintiff Dr. Katherine Pettigrew is the IGPVA candidate for U.S. House of Representatives in Virginia's 2nd District, Virginia resident, voter, and petition circulator. Dr. Pettigrew has been completely prevented from gathering petition signatures since the shutdown began in March.

18.     Plaintiff Rachel Batts is the IGPVA candidate for U.S. House of Representatives in Virginia's 3rd District, a Virginia resident, voter, and petition circulator. Ms. Batts has been completely prevented from gathering petition signatures since the shutdown began in March.

19.     Plaintiff Col. Albert Burchard is the IGPVA candidate for U.S. House of Representatives in Virginia's 4th District, a Virginia resident, voter, and petition circulator. Col. Burchard has been completely prevented from gathering petition signatures since the shutdown began in March.

20.     Plaintiff Aaron Lyles is the IGPVA candidate for U.S. House of Representatives in Virginia's 6th District, a Virginia resident, voter, and petition circulator. Mr. Lyles has been completely prevented from gathering petition signatures since the shutdown began in March.

21.     Plaintiff Peter Marchetti is the IGPVA candidate for U.S. House of Representatives in Virginia's 7th District, a Virginia resident, voter, and petition circulator. Mr. Marchetti has been completely prevented from gathering petition signatures since the shutdown began in March.

22.     Plaintiff Capt. Ron Fisher is the IGPVA candidate for U.S. House of Representatives in Virginia's 8th District, a Virginia resident, voter, and petition circulator. Capt. Fisher has been completely prevented from gathering petition signatures since the shutdown began in March.

23.     Plaintiff Jeremiah Heaton is the IGPVA candidate for U.S. House of Representatives in Virginia's 9th District, a Virginia resident, voter, and petition circulator. Mr. Heaton has been completely prevented from gathering petition signatures since the shutdown began in March.

24.     Plaintiff Terry Modglin is the IGPVA candidate for U.S. House of Representatives in Virginia's 10th District, a Virginia resident, voter, and petition circulator. Mr. Modglin has been completely prevented from gathering petition signatures since the shutdown began in March.

25.     Defendant State Board of Elections, through the Virginia Department of Elections, oversees "voter registration, absentee voting, ballot access for candidates, campaign finance disclosure and voting equipment certification in coordination with Virginia's 133 local election offices."[1] *See also* Va. Code § 24.2-103(A) (vesting the State Board of Elections, through the Department of Elections, with supervisory authority to obtain uniformity in election laws). The State Board of Elections also has the duty to prescribe various forms for the registration of voters and the conduct of elections. See Va. Code § 24.2-105. The State Board of Elections has prescribed Form SBE 506/521, the form that contains the signatures of voters to get a candidate's name on the ballot.

26.     Defendant Robert H. Brink is the Chairman of the State Board of Elections. He in sued in his official capacity.

27.     Defendant John O'Bannon is the Vice-Chairman of the State Board of Elections. He is sued in his official capacity.

28.     Defendant Jamilah D. Lecruise is the Secretary of the State Board of Elections. She is sued in her official capacity.

---

[1] *See* Department of Elections, *About the Agency*, available at https://www.virginia.gov/agencies/department-of-elections/

29.     Defendant Christopher E. "Chris" Piper is the Commissioner of the State Board of Elections. He is sued in his official capacity.

30.     Defendant Jessica Bowman is the Deputy Commissioner of the State Board of Elections. She is sued in her official capacity.

## JURISDICTION AND VENUE

31.     This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343.

32.     Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, Rules 57 and 65 of the Federal Rules of Civil Procedure, and the general legal and equitable powers of this Court.

33.     Venue is proper in this District under 28 U.S.C. § 1391(b) because one or more of the Defendants resides in this judicial district and because a substantial part of the events or omissions giving rise to Plaintiffs claims occurred in this judicial district.

## FACTS

### A. The COVID-19 Pandemic

34.     COVID-19 (the "virus") is an infectious disease affecting the respiratory system, which was first identified in 2019, in Wuhan, China. Since then, it has spread globally and is now present in all 50 states.

### B. Governor Northam's State of Emergency

35.     In response to the virus' increasing presence in Virginia, on March 12, 2020, Governor Northam declared a State of Emergency. In his "Declaration Of A State Of Emergency Due To Novel Coronavirus (Covid-19), Governor Northam declared that COVID-19 is a public health threat because it is a communicable disease.

36.     The following day, President Trump declared a national emergency.

37.     Three days later on Monday, March 16, 2020, Governor Northam issued a directive stating that restaurants, fitness centers, and theaters either had to reduce capacity to 10 people or close. Governor Northam also banned all events with 100 or more persons.

38.     Later, on Monday March 16, 2020, the Supreme Court of Virginia declared a judicial emergency. This order declared that a judicial emergency exists from March 16, 2020, to Monday, April 6, 2020. The order further ordered that all non-emergency and non-essential court proceedings be suspended and that all deadlines are tolled for 21-days.

39.     Then, on March 17, 2020, President Trump declared that for a period of 15 days, there should be no gatherings of 10 or more people.

40.     On March 30, 2020, Governor Northam issued Executive Order Number Fifty-Five (2020) that ordered Virginians to remain in their places of residence except when leaving for certain essential needs and prohibited public and private in-person gatherings of more than ten individuals. The Order is effective until June 10, 2020.

41.     The White House in collaboration with the Center for Disease Control published guidelines for how people should conduct themselves during the pandemic. Included within these guidelines is the recommendation that in areas where community spread of COVID-19 is present, "bars, restaurants, food courts, gyms, and other indoor and outdoor venues where groups of people congregate should be closed." Additionally, people should avoid discretionary travel, including shopping trips and social visits.

42.     Finally, of specific importance, the Center for Disease Control has recommended that people maintain a safe social distance of at least six feet. This is because contact with a person within six feet can cause transmission of COVID-19.

43.     The Defendants themselves have in fact started taking measures to limit human interaction in relation to the upcoming election. In recognizing the danger of coming into close contact with others, the Virginia Department of Elections "to protect [Voters'] health during COVID-19 outbreak" is strongly encouraging voters to vote absentee in the upcoming May elections. The Department is advising voters to choose reason "2A My disability or illness" for Absentee voting in the June 2020 elections due to COVID-19."

### C. Virginia's Efforts to Relieve the Petition Signature Gathering Burden to Date

44.     In recognition of the difficulty of collecting petition signatures during this crisis, on March 26, 2020, the requirements in Virginia to gather petition signatures for Republican candidates for the U.S. Senate was lowered from 10,000 to 3,500 by Richmond Virginia Circuit Court Judge Reilly "Ry" Marchant.

45.     Judge Marchant did so in response to a lawsuit brought by Republican candidate Omari Faulkner, who had gathered around 3,700 signatures.

46.     "In normal circumstances, a signature requirement in order for an individual to be placed on the ballot is a light burden," Judge Marchant wrote. "However, the circumstances as they exist in the Commonwealth of Virginia and across the United States are not normal right now."

47.     On April 9, 2020, Governor Northam used his authority as governor to postpone the June 9 primary elections to June 23.

48.     On April 23, 2020, the state legislature rejected Governor Northam's proposal to move the May elections for more than 50 localities from May to November.

49.     On April 24, 2020, Governor Northam signed an executive order moving local and state elections scheduled for May 5 to May 19. The Commonwealth's constitution empowers Virginia's governor to move an election two weeks without the General Assembly's approval.

50.     When contacted by Mr. Bupp, the Virginia Department of Elections stated that it had no plans to change the petition signature requirements for independent candidates regardless of the ongoing pandemic.

### D.  The State of Emergency Makes It Impossible for Third Parties and Independents to Get on the Ballot

51.     June 9 is the deadline for third-party candidates for the U.S. House of Representatives to file petition signatures. The number of signatures required for third-party candidates for the U.S. House of Representatives is 1,000.

52.     August 21 is the deadline for third-party candidates for President of the United States. The number of signatures required for third-party candidates for the U.S. presidency is 5,000.

53.     August 21 is the deadline for third-party candidates for the U.S. Senate. The number of signatures required for third-party candidates for the U.S. Senate is 10,000

54.     Third parties and independent candidates in a normal election year have access to significantly less resources, personnel, and equipment. Their campaigns rely on boots-on-the-ground volunteer work and community outreach.

55.     The COVID-19 outbreak has made the already arduous path to ballot access for third party and independent candidates now impossible.

56.     Plaintiffs and their supporters are unlikely to be able to obtain the necessary signatures prior to the deadlines – absent the relief sought in this lawsuit.

57.     At best, continued attempts to obtain signatures is overly burdensome, and at worst it is illegal and in direct conflict with directives from everyone in the public health community, which only risks making a very serious situation worse and specifically exposes petition circulators, potential candidates, and voters to additional dangers.

58.     Plaintiffs and their supporters would have been able to satisfy the signature requirements but for the unanticipated and unprecedented pandemic of COVID-19.

59.     Absent an injunction, the Virginia ballot will not show the names of Plaintiffs. This will violate their constitutional rights to free speech and free association.

### E.  U.S. Constitutional Law

60.     The First Amendment declares in no uncertain terms that Congress shall make no law abridging the freedom of speech. U.S. Const. amend. I. *See also Citizens United v. FEC*, 558 U.S. 310, 336 (2010). This restriction against governmental power is applied to the states through the Fourteenth Amendment. *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015).

61.     "It is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech." *NAACP v. Alabama*, 357 U.S. 449, 460 (1958).

62.     The Supreme Court has made clear, "whether the beliefs sought to be advanced by association pertain to political, economic, religious or cultural matters … state action which may have the effect of curtailing the freedom to associate is subject to the closest scrutiny" *Id*. at 460-61.

63.     The right to "voluntary political association … is an important aspect of the First Amendment freedom" that the Supreme Court "has consistently found entitled to constitutional protection." *Lefkowitz v. Cunningham*, 431 U.S. 801, 808 (1977).

64.     A person's ability to exercise their rights guaranteed under the First Amendment is "[u]ndeniably enhanced by group association." *Buckley v. Valeo*, 424 U.S. 1, 15 (1976) (quoting *NAACP v. Alabama*, 357 U.S. at 460.

65.     Ballot restrictions that severely burden the right to vote and associate violate the First Amendment to the U.S. Constitution. See *Storer v. Brown*, 415 U.S. 724, 728-29 (1974).

66.     Accordingly, "[p]recision of regulation must be the touchstone in an area so closely touching our most precious freedoms. If the State has open to it a less drastic way of satisfying its legitimate interests, it may not choose a legislative scheme that broadly stifles the exercise of fundamental personal liberties." *Kusper v. Pontikes*, 414 U.S. 51, 59 (1973) (internal quotation marks and citations omitted).

67.     Therefore, in recognizing that States must enact election codes for orderly, fair, and honest elections, courts reviewing challenges to ballot access cases impose a flexible standard. *Burdick v. Takushi*, 504 U.S. 428, 433-34 (1992). If the election regulation imposes a severe burden, then the regulation must survive strict scrutiny. *Id*. at 434. By contrast, if the election regulation imposes a light burden, rational basis or intermediate scrutiny applies. *Id*.

68.     Under the current conditions created by COVID-19, including a declared state of emergency in our Commonwealth, Governor Northam's Stay At Home Order, as well as a declared National emergency, Virginia's signature requirement imposes a severe burden on Plaintiffs.

69.     This burden is compounded because of the various government recommendations that individuals maintain at least six feet distance between them.

70.     Virginia does not have a compelling justification to require Plaintiffs to continue circulating large numbers of petitions between now and June 15 when there are guidelines from the U.S. Government, Virginia government, and the Center for Disease Control recommending people to maintain a safe distance of six feet or more.

71.     Furthermore, Virginia cannot claim a compelling justification when Virginia, recognizing the danger imposed by the communicable disease COVID-19, is encouraging voters to cast absentee ballots rather than go to the polls and vote. The fact that Defendants are encouraging voters to vote absentee and not travel to the polls insinuates that it is contrary to the health of Virginians to come into close contact with others. Virginia cannot say that for the health of voters, do not vote in person but still demand that Plaintiffs still send volunteers out to neighborhoods and businesses and collect signatures in person.

72.     In analogous situations, courts have extended voter registration deadlines in light of natural disasters, such as hurricanes. *See Fla. Democratic Party v. Scott*, 215 F. Supp. 3d 1250 (N.D. Fla. 2016). In that court's analysis of the burden, the court noted that in the final week before voter registration closed, an estimated 100,000 people were expected to register. *Id*. at 1257. But because of Hurricane Matthew, these potential voters were forced to flee the State. *Id*. Thus, these potential voters could not vote because they were unregistered. *Id*. Florida's voter registration statute imposed a severe burden that it could not justify. *Id*.

73.     Because the inability to register to vote meant these 100,000 people could not vote, the court ruled that was a severe burden. *Id*.

74.    Florida could not justify its severe burden because, similar to here, several other states impacted by Hurricane Matthew either extended their voter registration deadlines or permitted voter registration on Election Day. *Id.* Accordingly, under the flexible approach explained in *Burdick*, the court ruled that under any standard, Florida could not justify its decision not to extend voter registration in light of Hurricane Matthew. *Id.* at 1257-58; *see also Ga. Coalition for the Peoples' Agenda, Inc. v. Deal*, 214 F. Supp. 3d 1344 (S.D. Ga. 2016) (ordering an extension of voter registration deadline due to Hurricane Matthew because the loss of the right to vote would be an irreparable harm and when balanced to the administrative burden of extending registration deadline, the harm to voting rights outweighed the administrative burden).

75.    Accordingly, Virginia does not have a compelling or even sufficiently important interest to justify maintaining its 1,000-signature requirement in light of the current public health emergency.

76.    At all times stated herein Defendants were acting under color of state law.

**CLAIMS FOR RELIEF**

**COUNT ONE**

**(Violation of First and Fourteenth Amendment Rights – 1983 Action)**

77.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

78.    The First Amendment to the United States Constitution provides "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I.

79. The First Amendment's guarantees of freedom of speech, freedom of the press, freedom of assembly, freedom of religion, and freedom to petition for redress of grievances are applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution.

80. Under 42 U.S.C. § 1983, every person who, under color of state law, subjects any citizen of the United States to the deprivation of "rights, privileges, or immunities secured by the Constitution and laws," shall be liable to the injured party.

81. Defendants' actions effectively prohibit Plaintiffs from obtaining the required number of signatures, and in turn, prevent them from having their names placed on the ballot in violation of their freedoms of speech and association, equal protection, and due process rights as guaranteed by the First and Fourteenth Amendments, and as enforced by 42 U.S.C. § 1983.

82. Because of the relevant Declarations of Emergency and Governor Northam's Stay At Home Order, it is impracticable for Plaintiffs and their campaigns to obtain 1,000, let alone 10,000 petition signatures.

83. Because of the relevant Declarations of Emergency and Governor Northam's Stay At Home Order, Virginia's petition signature requirements are overly broad, in no way narrowly tailored, and deprive Plaintiffs of their First and Fourteenth Amendment Rights.

84. Defendants have no governmental interest so compelling as to justify the denial of Plaintiffs' rights as guaranteed by the First and Fourteenth Amendments to the United States Constitution.

85. Defendants have less restrictive means by which their interests could be met.

86. Plaintiffs have no adequate legal, administrative, or other remedy by which to prevent or minimize the continuing irreparable harm to their constitutional rights.

87.    Plaintiffs are therefore entitled to declaratory and permanent injunctive relief pursuant to 28 U.S.C. §§ 2201, 2202.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ask this Court:

A. To immediately issue a temporary restraining order, followed by a preliminary injunction, and ultimately a permanent injunction, restraining Defendants, their officers, agents, servants, employees, and attorneys, and any persons in active concert or participation with them, from enforcing Va. Code § 24.2-506(1), Va. Code § 24.2-506(2) and Va. Code § 24.2-543 as they relate to petition signature requirements for independent candidates for the U.S. Senate, U.S. House of Representatives, Vice President and President of the United States.

B.  To enter a judgment declaring that Va. Code § 24.2-506(1), Va. Code § 24.2-506(2) and Va. Code § 24.2-543 violate the First and Fourteenth Amendments to the U.S. Constitution as applied to independent candidates during this particular election;

C.  To award Plaintiffs their attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and Rule 3:2 of the Rules of the Supreme Court of Virginia; and

D.  To grant such other and further relief as the Court deems just and proper.


Respectfully submitted,

HARDIN LAW OFFICE

/s/ Matthew D. Hardin
Matthew D. Hardin, VSB #87482
324 Logtrac Road
Stanardsville, VA 22973
(434) 202-4224
Matt@MatthewHardin.com
*Local Counsel for Plaintiffs*

BARNES LAW, LLP

/s/ Robert E. Barnes
Robert E. Barnes, CA SBN #235919
*Pro Hac Vice to be filed*
601 South Figueroa Street, Suite 4050
Los Angeles, CA 90017
(310) 510-6211 – Main
(310) 510-6225 – Fax
robertbarnes@barneslawllp.com
*Attorneys for Plaintiffs*