UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| THE LIBERTARIAN PARTY OF VIRGINIA; JO JORGENSEN, Libertarian Party of Virginia Presidential Candidate; NICK DUNBAR, Chairman of the Libertarian Party of Virginia; THE CONSTITUTION PARTY OF VIRGINIA; JOHN BLOOM, Chairman of the Constitution Party of Virginia; SHEILA "SAMM" TITTLE, Constitution Party of Virginia Presidential candidate; MITCHELL BUPP, Independent candidate for U.S. House of Representatives; THE GREEN PARTY OF VIRGINIA; BECKER SIDNEY SMITH, Green Party of Virginia Presidential candidate and General Secretary of Green Party of Virginia; CHERI HONKALA, Green Party of Virginia Vice Presidential candidate; DIANNE BLAIS, Green Party of Virginia candidate for U.S. House of Representatives; THE INDEPENDENT GREEN PARTY OF VIRGINIA; CAREY CAMPBELL, Chairman of the Independent Green Party of Virginia; GLENDA GAIL PARKER, Independent Green Party of Virginia candidate for U.S. Senate; HARLAN WAHLERT, Independent Green Party of Virginia candidate for U.S. House of Representatives; DR. KATHERINE PETTIGREW, Independent Green Party of Virginia candidate for U.S. House of Representatives; RACHEL BATTS, Independent Green Party of Virginia candidate for U.S. House of Representatives; COL. ALBERT BURCHARD, Independent Green Party of Virginia Candidate for U.S. House of Representatives; AARON LYLES, Independent Green Party of Virginia Candidate for U.S. House of Representatives; PETER MARCHETTI, Independent Green Party of Virginia Candidate for U.S. House of Representatives; CAPT. RON FISHER, Independent Green Party of Virginia Candidate for U.S. House of Representatives; | Case No. 3:20-cv-00349<br><br>**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND/OR TEMPORARY RESTRAINING ORDER AND ATTACHED MEMORANDUM OF LAW IN SUPPORT** |

1

| | |
|---|---|
| JEREMIAH HEATON, Independent Green Party of Virginia Candidate for U.S. House of Representatives; TERRY MODGLIN; Independent Green Party of Virginia, Candidate for U.S. House of Representatives,<br><br>                      Plaintiffs,<br><br>v.<br><br>VIRGINIA STATE BOARD OF ELECTIONS,<br><br>ROBERT H. BRINK, Chairman of the State Board of Elections, in his official capacity, JOHN O'BANNON, Vice-Chairman of the State Board of Elections, in his official capacity, JAMILAH D. LECRUISE, Secretary of the State Board of Elections, in her official capacity, CHRISTOPHER E. "CHRIS" PIPER, Commissioner of the State Board of Elections, in his official capacity, JESSICA BOWMAN, Deputy Commissioner of the State Board of Elections, in her official capacity.<br><br>                      Defendants. | |

## INTRODUCTION

Pursuant to Federal Rules of Civil Procedure 65(a) and (b), and in view of the public health crisis precipitated by the coronavirus pandemic known as COVID-19 and the ensuing emergency measures adopted by the Commonwealth of Virginia, Plaintiffs respectfully move the Court to enter a preliminary injunction and/or temporary restraining order that prohibits

2

Defendants from enforcing or applying those provisions of the Virginia Code that require Plaintiffs, as a condition of qualifying for the general election ballot, to collect a specified number of voters' signatures on petitions. Plaintiffs specifically request that the Court enjoin Defendants from enforcing the following statutory provisions as applied to Plaintiffs in the 2020 election cycle: Va. Code § 24.2-506(2); Va. Code § 24.2-506(1); and Va. Code § 24.2-543. Further, Plaintiffs request that the Court direct Defendants to: (1) accept Plaintiffs Libertarian Party of Virginia ("LPVA"), Constitution Party of Virginia ("CPV"), Green Party of Virginia ("GPVA"), and Independent Green Party of Virginia ("IGPVA") candidates' and Plaintiff Bupp's nominating papers for the November 3, 2020 general election without requiring supporting signatures from voters; and (2) place Plaintiffs LPVA, CPV, GPVA, and IGPVA candidates' and Plaintiff Bupp names on Virginia's November 3, 2020 general election ballot.

Plaintiffs certify that counsel for Defendants has been contacted and provided copies of the First Amended Complaint, this Motion, the supporting declarations and exhibits, and Plaintiffs' Proposed Order. Plaintiffs have requested of Defendants' counsel a waiver of service of process under Federal Rule of Civil Procedure 4.

Respectfully submitted,

HARDIN LAW OFFICE

/s/ Matthew D. Hardin
Matthew D. Hardin, VSB #87482
324 Logtrac Road
Stanardsville, VA 22973
(434) 202-4224
Matt@MatthewHardin.com
*Local Counsel for Plaintiffs*

BARNES LAW, LLP

/s/ Robert E. Barnes
Robert E. Barnes, CA SBN #235919

*Pro Hac Vice to be filed*
601 South Figueroa Street, Suite 4050
Los Angeles, CA 90017
(310) 510-6211 – Main
(310) 510-6225 – Fax
robertbarnes@barneslawllp.com
*Attorneys for Plaintiffs*

## **MEMORANDUM OF LAW IN SUPPORT**

The COVID-19 pandemic has given rise to an extraordinary set of circumstances in Virginia and nationwide. In an effort to contain the virus and protect the public health, the Commonwealth of Virginia has implemented several emergency measures that, although perhaps reasonable in light of the public health crisis, make it impossible for Plaintiffs and other citizens to comply with the statutory procedures they must follow to participate in Virginia's electoral processes. In particular, as voters, petition circulators, candidates and minor political parties in Virginia, Plaintiffs are required by law to obtain voters' signatures on petitions to qualify their respective candidates for placement on Virginia's November 3, 2020 general election ballot. Under the emergency measures now in place, however, Plaintiffs cannot lawfully comply with these requirements.

In response to the virus' increasing presence in Virginia, on March 12, 2020, Governor Northam declared a State of Emergency. In his "Declaration Of A State Of Emergency Due To Novel Coronavirus (Covid-19), Governor Northam declared that COVID-19 is a public health threat because it is a communicable disease. Four days later on Monday, March 16, 2020, Governor Northam issued a directive stating that restaurants, fitness centers, and theaters either had to reduce capacity to 10 people or close. Governor Northam also banned all events with 100 or more persons. Later, on Monday March 16, 2020, the Supreme Court of Virginia declared a judicial emergency. This order declared that a judicial emergency exists from March 16, 2020, to Monday, April 6, 2020. The order further ordered that all non-emergency and non-essential court proceedings be suspended and that all deadlines are tolled for 21-days. Then, on March 30, 2020, Governor Northam issued Executive Order Number Fifty-Five (2020) that ordered Virginians to remain in their places of residence except when leaving for certain essential needs and prohibited

public and private in-person gatherings of more than ten individuals. The Order is effective until June 10, 2020.

The White House in collaboration with the Center for Disease Control published guidelines for how people should conduct themselves during the pandemic. Included within these guidelines is the recommendation that in areas where community spread of COVID-19 is present, "bars, restaurants, food courts, gyms, and other indoor and outdoor venues where groups of people congregate should be closed." Additionally, people should avoid discretionary travel, including shopping trips and social visits. Finally, of specific importance, the Center for Disease Control has recommended that people maintain a safe social distance of at least six feet. This is because contact with a person within six feet can cause transmission of COVID-19. The Defendants themselves have in fact started taking measures to limit human interaction in relation to the upcoming election. In recognizing the danger of coming into close contact with others, the Virginia Department of Elections "to protect [Voters'] health during COVID-19 outbreak" is strongly encouraging voters to vote absentee in the upcoming May elections. The Department is advising voters to choose reason "2A My disability or illness" for Absentee voting in the June 2020 elections due to COVID-19."

On April 21, 2020, and May 4, 2020, Plaintiff LPVA wrote to Governor Northam requesting relief from the petitioning requirements imposed on it under Virginia law. (Exhibit A, Exhibit B). To date, Plaintiff LPVA has received no response.

I. **Plaintiffs Are Entitled to Preliminary Relief.**

When making a request for a preliminary injunction, the Plaintiffs must show that (1) they are likely to succeed on the merits; (2) they will likely suffer irreparable harm absent an injunction; (3) the balance of hardships weighs in their favor; and (4) the injunction is in the

public interest. *League of Women Voters of North Carolina v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014).

### A. Plaintiffs Will Suffer Irreparable Harm if the Court Does Not Grant Them Injunctive Relief

Plaintiffs urgently need relief from this Court because they are required to obtain a statutorily prescribed number of voters' signatures on petitions by June 9, 2020, and if they fail to do so, Plaintiffs LPVA, CPV, GPVA, and IGPVA candidates and Plaintiff Bupp will be excluded from Virginia's November 3, 2020 general election ballot. At the same time, Executive Order Number Fifty-Five (2020) prohibits Plaintiffs from approaching voters for purposes of obtaining their signatures. Plaintiffs have requested that Defendants suspend Virginia's petition requirements, but Defendants have failed to respond to those requests. Plaintiffs will suffer irreparable harm in the absence of injunctive relief. It is well-settled that the "loss of First Amendment freedoms, for even minimal periods of time, unquestionable constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Plaintiffs are suffering such harm now. "Petition circulation … is 'core political speech,' because it involves 'interactive communication concerning political change.'" *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 186 (1999) (quoting *Meyer v. Grant*, 486 U.S. 414, 422 (1988)). First Amendment protection is therefore "at its zenith" with respect to Plaintiffs' right to circulate petitions in support of their respective candidates. *Id*. Consequently, each day that Virginia law prohibits Plaintiffs from commencing their petition drives, they suffer irreparable harm to their core First Amendment rights. *See Buckley*, 525 U.S. at 186; *Elrod*, 427 U.S. at 373.

### B. Plaintiffs Have a Strong Likelihood of Success on the Merits.

The extraordinary circumstances from which this case arises make it an easy one to

decide. Under Virginia law as it now exists, Plaintiffs have <u>no lawful procedure by which they may qualify their candidates for Virginia's November 3, 2020 general election ballot.</u> Plaintiffs are entitled to the relief requested on that basis alone. Plaintiffs are also entitled to the relief requested because Virginia's petitioning requirements, as applied here, cannot withstand constitutional scrutiny under the analytic framework the Supreme Court set forth in *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992).

> **1. Plaintiffs Are Entitled to Relief Because Virginia Has Failed to Provide Them With Any Procedure for Qualifying for the November 3, 2020 General Election Ballot**

When states fail to provide candidates and parties with a procedure by which they may qualify for the ballot, the Supreme Court and lower federal courts have not hesitated to remedy the defect by placing candidates and parties on the ballot by court order. In 1976, for instance, several states provided no procedure for independent candidates to qualify for the ballot. In each of these states, independent presidential candidate Eugene McCarthy sought relief in federal court, and without exception the courts ordered that he be placed on the ballot. *See McCarthy v. Briscoe*, 429 U.S. 1317, 97 S. Ct. 10 (1976) (Powell, J. in Chambers) (placing McCarthy on Texas ballot); *McCarthy v. Askew*, 540 F.2d 1254, 1255 (5th Cir. 1976) (per curiam) (affirming order placing McCarthy on Florida's ballot); *McCarthy v. Noel*, 420 F. Supp. 799 (D. R.I. 1976) (placing McCarthy on Rhode Island ballot); *McCarthy v. Tribbitt*, 421 F. Supp. 1193 (D. Del. 1976) (placing McCarthy on Delaware ballot); *McCarthy v. Austin*, 423 F. Supp. 990 (W.D. Mich. 1976) (placing McCarthy on Michigan ballot). As Justice Powell observed in *McCarthy v. Briscoe*, the Supreme Court had followed the same procedure in 1968, when it ordered that several candidates who successfully challenged the constitutionality of Ohio's ballot access laws

Case 3:20-cv-00349-JAG   Document 7   Filed 06/08/20   Page 9 of 15 PageID# 97

be placed on its ballot. *See McCarthy v. Briscoe*, *supra*, citing *Williams v. Rhodes*, 89 S. Ct. 1, 21 L.Ed.2d 69 (Stewart, J., in Chambers, 1968).

In 1980, Michigan had failed to enact a procedure for independent candidates to access the ballot following the decision in *McCarthy v. Austin*, *supra*, and two independent candidates running for president and vice-president filed suit. *See Hall v. Austin*, 495 F. Supp. 782 (E.D. Mich. 1980). Once again, a federal court ordered that the independent candidates be placed on Michigan's ballot. *See id.* at 791-92. The issue arose again in 1984, because Michigan still had not enacted a procedure for independent candidates to qualify for the ballot. An independent candidate for the State Board of Education filed suit, the district court again declared Michigan's ballot access scheme unconstitutional, and the Secretary of State was ordered to place the candidate on the ballot. *See Goldman-Frankie v. Austin*, 727 F.2d 603, 607-08 (6th Cir. 1984).

In *Williams*, the Supreme Court explained the rationale for federal courts to grant such relief: the Constitution does not permit states to restrict access to the ballot in a manner that "favors two particular parties – the Republicans and the Democrats – and in effect tends to give them a complete monopoly." *Williams v. Rhodes*, 393 U.S. 23, 32 (1968)). Here, the Commonwealth of Virginia – albeit with the unwanted intrusion of a global pandemic – has accomplished that same result. Virginia will hold its primary election June 23, 2020, and the Republican and Democratic nominees selected by means of that taxpayer-funded procedure will be qualified to appear on Virginia's 2020 general election ballot. Yet it is unlawful – a violation of Executive Order Number Fifty-Five (2020) – for Plaintiffs and all other candidates and parties to engage in petitioning, which is the only procedure that Virginia provides for them to qualify for the general election ballot. The grounds for this Court's intervention could not be clearer.

9

Virginia did not cause the outbreak of the COVID-19 virus, of course, but that is immaterial. Virginia is constitutionally required to provide its citizens with a lawful procedure to qualify for its general election ballot, and it has failed to do so. Certainly, Virginia could have adopted measures to remedy this constitutional defect. Governor Northam has issued several executive orders that impose sweeping changes to Virginia law – and which incidentally make it impossible for Plaintiffs to qualify for Virginia's November 3, 2020 general election ballot – but Defendants have either declined or failed to respond to Plaintiffs' requests for relief. (Exhibit A, Exhibit B) Under these circumstances, Plaintiffs are entitled to an order from this Court placing them on the ballot.

### 2. Virginia's Statutory Scheme Cannot Withstand Constitutional Scrutiny as Currently Applied

Plaintiffs are also entitled to relief because Virginia's statutory scheme, as currently applied, cannot withstand constitutional scrutiny under the Supreme Court's *Anderson-Burdick* analytic framework. Under that analysis, a reviewing court must:

> first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

*Anderson*, 460 U.S. at 789. This framework establishes a "flexible standard," according to which "the rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged restriction burdens First and Fourteenth Amendment rights." *Burdick*, 504 U.S. at 434*; Marcellus v. Va. State Bd. of Elections*, 849 F.3d 169, 175 (4th Cir. 2017). Under this standard, "reasonable, nondiscriminatory restrictions" are subject to less exacting review,

whereas laws that imposes "severe" burdens are subject to strict scrutiny. *Burdick*, 504 U.S. at 434 (citations omitted). But in every case, "However slight [the] burden may appear ... it must be justified by relevant and legitimate state interests sufficiently weighty to justify the limitation." *Crawford v. Marion County Election Bd.*, 128 S.Ct. 1610, 1616 (2008) (citation and quotation marks omitted); *McLaughlin v. N.C. Bd. of Elections*, 65 F.3d 1215, 1221 n.6 (4th Cir. 1995) ("We believe that a regulation which imposes only moderate burdens could well fail the *Anderson* balancing test when the interests that it serves are minor, notwithstanding that the regulation is rational.").

As the Seventh Circuit has explained, "[m]uch of the action takes place at the first stage of *Anderson's* balancing inquiry," because the severity of the burden imposed is what determines whether strict scrutiny or a less demanding level of review applies. *Stone v. Board of Election Com'rs for City of Chicago*, 750 F.3d 678, 681 (7th Cir. 2014) (citing *Burdick*, 504 U.S. at 534). Here, the burden imposed could not be more severe: Virginia law as currently applied prohibits Plaintiffs and all other minor party and independent candidates from seeking to qualify for the general election ballot. Such "complete exclusion," the Seventh Circuit has concluded, constitutes a "severe" burden on the First and Fourteenth Amendment rights of the affected voters, candidates and parties. *Lee v. Keith*, 463 F.3d 768, 770 (7th Cir. 2006).

"Restrictions that 'severely' burden the exercise of constitutional rights must be 'narrowly drawn to advance a state interest of compelling importance.'" *Lee*, 463 F.3d at 768 (quoting *Burdick*, 504 U.S. at 434). But no state interest, compelling or otherwise, is sufficient to justify Virginia's complete exclusion of all minor party and independent candidates from its general election ballot. In *Lee*, for example, the Seventh Circuit acknowledged that promoting political stability and preventing ballot clutter "are important state interests," but it found them

insufficient to justify the challenged restrictions. *Id*. at 770-71. Such interests, the Court concluded, do not "'permit a State to completely insulate the two-party system from minor parties' or independent candidates' competition and influence,' and that is effectively what Illinois has done." *Id*. at 771 (quoting *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 366-67 (1997)).

To be sure, Virginia has a strong and even compelling interest in protecting the public health during a pandemic. But no court has ever upheld a ballot access restriction that categorically excludes all candidates except Republicans and Democrats. Because petition circulation is prohibited under Virginia law, and Virginia has failed to establish an alternative procedure by which minor party and independent candidates may qualify for its general election ballot, Virginia's petitioning requirements are unconstitutional as applied to Plaintiffs in the 2020 general election cycle.

### C. The Balance of Harms Weighs Strongly in Plaintiffs' Favor.

The harm that Plaintiffs will suffer in the absence of the requested relief is plain: their candidates will be excluded from Virginia's November 3, 2020 general election ballot; voters will be deprived of the opportunity to hear their political views and to associate with and support them; LPVA, CPV, GPVA, and IGPVA will be prevented from disseminating and building support for their platforms among the general electorate; and LPVA, CPA, GPVA, and IGPVA will be denied the opportunity to win sufficient electoral support to retain ballot access in the next election cycle. The Supreme Court has expressly relied on such harms to justify granting the relief that Plaintiffs request here. *See*, *e.g.*, *Norman v. Reed*, 502 U.S. 279, 288-89 (1992); *Anderson*, 460 U.S. at 793-94; *Williams*, 393 U.S. at 30-31. The Court's admonition in Williams bears repeating:

> The right to form a party for the advancement of political goals means little if a party can be kept off the election ballot and thus denied an equal opportunity to win votes. So also, the right to vote is heavily burdened if that vote may be cast only for one of two parties at a time when other parties are clamoring for a place on the ballot.

*Williams*, 393 U.S. at 31. This Court's intervention is amply justified to prevent such harm to Plaintiffs' "most precious freedoms." Id. at 30.

By contrast, Defendants will not suffer any harm if the Court grants Plaintiffs the requested relief. Plaintiffs have qualified for Virginia's general election ballot with regularity in past election cycles, and there is no evidence that Virginia sustained any harm to its electoral processes as a result of their participation. On the contrary, as the Supreme Court has repeatedly observed, "[h]istorically political figures outside the two major parties have been fertile sources of new ideas and new programs; many of their challenges to the status quo have in time made their way into the political mainstream." *Anderson*, 460 U.S. at 794; *see Ill. Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 185-86 (1979); *Sweezy v. New Hampshire*, 354 U. S. 234, 250-251 (1957). Thus, the continued participation of Plaintiffs in Virginia's electoral process will benefit, not harm, Defendants and the voters of Virginia generally.

Moreover, the relief that Plaintiffs request here is precisely the same relief that other states have granted of their own volition. On March 30, 2020, for example, Vermont enacted legislation providing that "a person shall not be required to collect voter signatures in order to have the person's name placed on any ballot in the year 2020." *See* An Act Relating to Government Operations in Response to the COVID-19 Outbreak, HB 681 (2020), available at https://legislature.vermont.gov/Documents/2020/Docs/BILLS/H-0681/H 0681%20As%20Passed%20by%20Both%20House%20and%20Senate%20Official.pdf (accessed June 5, 2020).

No harm will come to Defendants or the Commonwealth of Virginia if the Court grants similar relief here. On the contrary, Defendants will be relieved of the considerable burden of validating petition signatures during the crunch of the election cycle. The balance of harms therefore weighs strongly in Plaintiffs' favor.

### D. The Requested Relief Is in the Public Interest.

Preliminary relief will benefit the public because it will protect the First Amendment rights of Virginia voters to cast their votes effectively and to associate with candidates and parties they support. "Injunctions protecting First Amendment freedoms are always in the public interest." *American Civil Liberties Union of Il. v. Alvarez*, 679 F.3d 583, 589 (7th Cir. 2012) (quoting Christian Legal Soc'y v. Walker, 453 F.3d 853, 859 (7th Cir. 2006) (footnote omitted)). This factor therefore also weighs in Plaintiffs' favor.

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully move the Court to issue preliminary relief.

Respectfully submitted,

HARDIN LAW OFFICE

/s/ Matthew D. Hardin
Matthew D. Hardin, VSB #87482
324 Logtrac Road
Stanardsville, VA 22973
(434) 202-4224
Matt@MatthewHardin.com
*Local Counsel for Plaintiffs*

BARNES LAW, LLP

/s/ Robert E. Barnes
Robert E. Barnes, CA SBN #235919
*Pro Hac Vice to be filed*
601 South Figueroa Street, Suite 4050

Los Angeles, CA 90017
(310) 510-6211 – Main
(310) 510-6225 – Fax
robertbarnes@barneslawllp.com
*Attorneys for Plaintiffs*