IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| THE CONSTITUTION PARTY OF VIRGINIA, et al., | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 3:20-cv-349 (JAG) |
| v. | ) ) | |
| VIRGINIA STATE BOARD OF ELECTIONS, et al., | ) ) ) | |
| Defendants. | ) ) | |

### DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND/OR <u>TEMPORARY RESTRAINING ORDER</u>

Mark R. Herring
   *Attorney General*

Erin B. Ashwell (VSB No. 79538)
   *Chief Deputy Attorney General*

Donald D. Anderson (VSB No. 22114)
Samuel T. Towell (VSB No. 71512)
   *Deputy Attorneys General*

Heather Hays Lockerman (VSB No. 65535)
Marshall H. Ross (VSB No. 29674)
   *Senior Assistant Attorneys General*

Carol L. Lewis (VSB No. 92362)
   *Assistant Attorney General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 692-0558 – Telephone
(804) 786-2650 – Facsimile
clewis@oag.state.va.us

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION .............................................................................................................. 1

STATEMENT OF FACTS ................................................................................................. 3

LEGAL STANDARD ......................................................................................................... 5

ARGUMENT ...................................................................................................................... 6

   I.    Plaintiffs' filing for relief on the literal eve of a petition signature deadline
       dictates that their claims be barred by the doctrine of laches ............................................ 6

   II.   Plaintiffs are not entitled to a preliminary injunction ......................................................... 9

       A.   Plaintiffs have not established that they are likely to succeed on the merits .............. 9

       B.   Plaintiffs have not shown that they are likely to suffer irreparable harm in the
           absence of preliminary relief ........................................................................................ 14

       C.   The balance of equities and public interest factors independently foreclose a
           grant of preliminary equitable relief ............................................................................ 15

CONCLUSION ................................................................................................................. 19

CERTIFICATE OF SERVICE ......................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Alberto v. Cochran,*
No. CL20000997 (Roanoke City Cir. Ct. June 4, 2020) ........................................................ 16

*Am. Party of Tex. v. White,*
415 U.S. 767 (1974) ........................................................................................................ 8

*Anderson v. Celebrezze,*
460 U.S. 780 (1983) ......................................................................................... 2, 10, 11, 20

*Bullock v. Carter,*
405 U.S. 134 (1972) ........................................................................................................ 3

*Burdick v. Takushi,*
504 U.S. 428 (1992) ............................................................................................ 2, 9, 10, 11

*Clements v. Fashing,*
457 U.S. 957 (1982) ........................................................................................................ 8

*Costello v. United States,*
365 U.S. 265 (1961) ........................................................................................................ 7

*Curtin v. Va. State Bd. of Elections,*
2020 U.S. Dist. LEXIS 98627 ............................................................................................ 7

*Faulkner v. Va. Dep't of Elections,*
2020 Va. Cir. LEXIS 70 ................................................................................................... 16

*Jenness v. Fortson,*
403 U.S. 431 (1971) ............................................................................................... 1, 8, 10

*Lean on McLean v. Showalter,*
2020 Va. Cir. LEXIS 74 ................................................................................................... 16

*Lubin v. Panish,*
415 U.S. 709 (1974) ...................................................................................................... 13

*Marcellus v. Virginia State Bd. of Elections,*
849 F.3d 169 (4th Cir. 2017) ........................................................................................... 11

*McCarthy v. Askew,*
540 F.2d 1254 (5th Cir. 1976) ......................................................................................... 12

*McCarthy v. Austin,*
423 F. Supp. 990 (W.D. Mich. 1976) ................................................................................. 12

*McCarthy v. Briscoe*,
  429 U.S. 1317 (1976) ........................................................................... 12

*McCarthy v. Noel*,
  420 F. Supp. 799 (D.R.I. 1976) ........................................................... 12

*McCarthy v. Tribbitt*,
  421 F. Supp. 1193 (D. Del. 1976) ....................................................... 12

*Miller v. Brown*,
  462 F.3d 312 (4th Cir. 2006) ............................................................... 18

*Nken v. Holder*,
  556 U.S. 418 (2009) ............................................................................. 15

*Perry v. Judd*,
  471 Fed. Appx. 219 (4th Cir. 2012) ....................................................... 7

*Perry v. Judd*,
  840 F. Supp. 2d 945 (E.D. Va. 2012) ................................................... 7, 9

*Purcell v. Gonzalez*,
  549 U.S. 1 (2006) ............................................................................. 3, 18

*Richmond for All v. Va. Dep't of Elections*,
  No. CL20002432 (Richmond City Cir. Ct. June 9, 2020) ................... 16

*Simkins v. Gressette*,
  631 F.2d 287 (4th Cir. 1980) ............................................................... 18

*Storer v. Brown*,
  415 U.S. 724 (1974) ............................................................................... 9

*Tashjian v. Republican Party of Conn.*,
  479 U.S. 208 (1986) .......................................................................... 2, 10

*Winter v. Natural Res. Def. Council*,
  555 U.S. 7 (2008) ........................................................................ passim

*Wood v. Quinn*,
  104 F. Supp. 2d 611 (E.D. Va. 2000) ..................................................... 8

**Statutes**

Title 24.2 of the *Virginia Code* ................................................................ 9

Va. Code § 24.2-505 et seq. ............................................................... 4, 12

Va. Code § 24.2-506. ....................................................................... 4, 5, 11

Va. Code § 24.2-507 ........................................................................ 4, 6, 7

Va. Code § 24.2-512 et seq. ........................................................................ 12

Va. Code § 24.2-522(A) ............................................................................. 11

Va. Code § 24.2-543 ........................................................................ 4, 5, 6, 11

Va. Code § 24.2-603.1 ................................................................................ 13

Va. Code § 24.2-648 ................................................................................... 14

Va. Code Ann. § 24.2-700(4) ....................................................................... 4

**Other Authorities**

Executive Order Fifty-One (2020) (Northam) ........................................... 3, 7

Executive Order Fifty-Five (2020) (Northam) ......................................... 3, 12

Order of Public Health Emergency Two (2020) (Northam & Oliver) ........................ 3

## INTRODUCTION

"There is surely an important state interest in requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot—the interest, if no other, in *avoiding confusion, deception, and even frustration of the democratic process at the general election*." *Jenness v. Fortson*, 403 U.S. 431, 442 (1971) (emphasis added). Plaintiffs, minor parties and independent and minor party candidates for the United States Senate, House of Representatives, President, and Vice President, sought an injunction from this Court to not only eliminate all requirements that they demonstrate any modicum of support before appearing on the ballot—they asked the Court to do so the day before the congressional candidates' petition signatures were due to be filed.

As justification for their extraordinary request, plaintiffs claim that the March 12, 2020, declaration of a state of emergency due to the COVID-19 pandemic by Governor Ralph Northam prevented them from gathering the statutorily prescribed number of signatures. Yet, plaintiffs sat on their claims for over two months before filing their initial complaint. They then further delayed their suit by waiting until June 8—the day before congressional candidate petition signatures were due—to file their motion for preliminary injunction/temporary restraining order. Plaintiffs also waited until June 8 to serve defendants. Thus, laches bars the relief sought for the congressional candidates.

Since the Governor issued the state of emergency declaration, multiple suits have been filed, served on defendant state elections agencies and officials and resolved prior to applicable candidate filing deadlines. See *infra*, n.12. Courts entered orders reducing signature requirements, but in none of these cases were signature requirements reduced to zero. *Id.* The plaintiff candidates in these prior matters still had to demonstrate a "modicum of support" to access the ballot. Here, plaintiffs seek relief that is not only late-in-time but that is not

1

appropriate in light of the relief that has been granted to other candidates and interest groups during this elections season.

The claims of all plaintiffs, including the presidential and vice presidential candidates, fall far short of meeting their heavy burden of showing an entitlement to a preliminary injunction. The presidential and vice presidential candidates still have more than two months— until August 21—to collect the necessary signatures. They make no showing that these candidates will be prevented by the pandemic from collecting the necessary number of signatures for presidential electors before the August 21 deadline.

Indeed, Plaintiffs' claim fails under the balancing test created by the Supreme Court in *Anderson v. Celebrezze*, 460 U.S. 780 (1983) and modified in *Burdick v. Takushi*, 504 U.S. 428 (1992). The *Anderson/Burdick* balancing test requires that a court considering a challenge to a state election law weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights." *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789; citing *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 213-14 (1986)). Here, the asserted injury of the plaintiffs was caused by their own failure to diligently collect petition signatures. That must be weighed against the Commonwealth's need to protect against voter confusion and duty to maintain the integrity of elections in order to ensure fair and efficient elections in the Commonwealth.

Under that test, when weighing plaintiffs' failure to diligently collect signatures against the Commonwealth's need to protect against voter confusion and duty to maintain the integrity

of elections, plaintiffs' claim is outweighed by the need to ensure fair and efficient elections in the Commonwealth.

Plaintiffs ignore the Supreme Court's caution that court orders affecting elections "can themselves result in voter confusion and consequent incentive to remain away from the polls." *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006). Indeed, to entirely eliminate the petition signature requirements would contravene the clear intent of the General Assembly to establish elections processes that would ensure the integrity of Virginia's elections. As the Supreme Court has stated, "a State has a legitimate interest in regulating the number of candidates on the ballot … In so doing, the State understandably and properly seeks to prevent the clogging of its election machinery, avoid voter confusion, and assure that the winner is the choice of a majority…." *Bullock v. Carter*, 405 U.S. 134, 145 (1972).

## STATEMENT OF FACTS

1.     *Safety precautions taken in March 2020*. In light of the COVID-19 pandemic, Commonwealth officials began taking precautions to protect the public in early March. On March 12, 2020, Governor Ralph S. Northam declared a state of emergency.[1] The Governor and State Health Commissioner jointly announced a public health emergency relating to the COVID-19 virus on March 25, 2020.[2] On March 30, 2020, the Governor issued a temporary stay at home order to curb the spread of the COVID-19 virus.[3]

2.     *Plaintiffs challenge Virginia's reasonable ballot access restrictions.* Plaintiffs are minor parties and independent and minor party candidates for the United States Senate,

---

[1] See Executive Order Fifty-One (2020) (Northam).

[2] Order of Public Health Emergency Two (2020) (Northam & Oliver).

[3] See Executive Order Fifty-Five (2020) (Northam).

House of Representatives, President, and Vice President who challenge the ballot access requirements for independent candidates to qualify to appear on the November 3, 2020 general election ballot.

The specific statutory provisions challenged by plaintiffs—requiring a minimum threshold of petition signatures that a candidate or party must provide in order to appear on a ballot—represent a critical part of the Commonwealth's efforts to protect the integrity of Virginia elections. Virginia law permits independent congressional candidates to appear on a ballot if they file the required declaration of candidacy and required number of petition signatures signed by qualified Virginia voters. Va. Code § 24.2-505 et seq. The number of petition signatures required to appear as a candidate for the United States Senate is 10,000, including 400 signatures from each congressional district. Va. Code § 24.2-506(1). The number of petition signatures required to appear as a candidate for House of Representatives is 1,000. Va. Code § 24.2-506(2). Those signatures were due by June 9, 2020. Va. Code § 24.2-507.[4]

Likewise, independent groups of qualified voters are permitted to select the names of electors to be printed on official ballots to be used in the selection of electors for President and Vice-President. Va. Code § 24.2-543. The qualified voters must submit petition signatures of at least 5,000 qualified voters, including at least 200 signatures from each congressional district. Va. Code § 24.2-543(A). Those signatures are required to be filed by August 21, 2020. *Id.*

3.    ***Plaintiffs' unaccounted-for delay in seeking relief.*** Plaintiffs filed their initial complaint on Friday, May 15, 2020—more two months after the Governor announced a state of emergency due to the COVID-19 pandemic. Plaintiffs did not file their motion for preliminary

---

[4] Plaintiffs incorrectly assert that petition signatures for United States Senate candidates are due to be filed August 21. Pl.'s Am. Compl. ¶ 53. Petition signatures for United States Senate candidates were due on June 9. See Va. Code § 24.2-507.

injunction/temporary restraining order until June 8, 2020—the day before congressional petition signatures were due and nearly three months after the state of emergency was declared. Likewise, plaintiffs did not serve defendants until June 8, 2020—almost a month after filing suit.

4.      ***More than 20 independent or minority candidates filed to qualify by the June 9, 2020 deadline.*** On or before June 9, 2020, twenty-three independent or minor party candidates for the United States House of Representatives and four independent or minor party candidates for the United States Senate filed petition signatures to qualify for the November 3, 2020 ballot. See Piper Decl. ¶ 10. Of those candidates, eleven are affiliated with the Independent Green Party and one is affiliated with the Green Party—both the Independent Green Party and the Green Party are plaintiffs in this case. See *id.* at ¶ 11. At this time, one independent candidate for United States House of Representatives filed 1,060 valid signatures and all other necessary candidate qualification documents on or prior to the deadline of June 9, 2020 See *id.* at ¶ 12. The Department of Elections is currently validating those signatures. See *id.* at ¶ 14.

5.      ***Plaintiffs ask this Court to permit them access to the ballot without collecting a single signature***. Plaintiffs request that this Court:

a.   Reduce the number of petition signatures required for independent or minor party United States Senate candidates and United States House of Representatives candidates to appear on the November 3, 2020 ballot under Va. Code § 24.2-506 from 10,000 and 1,000, respectively, to zero; and

b.   Reduce the number of petition signatures required for names of electors to appear on the November 3, 2020 ballot under Va. Code § 24.2-543 from 5,000 to zero.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24 (2008). Rather, "courts must balance the competing

claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* (citation omitted). In all cases, the party seeking injunctive relief "must establish [1] that [they are] likely to succeed on the merits, [2] that [they are] likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in their favor, and [4] that an injunction is in the public interest." *Id.* at 20.

## ARGUMENT

Plaintiffs' motion for a preliminary injunction fails for two reasons: *first,* plaintiffs' claims are barred by the doctrine of laches, and, *second*, the claims fall far short of establishing entitlement to equitable relief.

**I.    Plaintiffs' filing for relief on the literal eve of a petition signature deadline dictates that their claims be barred by the doctrine of laches**

Plaintiff waited until the eleventh hour to file their motion for preliminary injunction/temporary restraining order or to even serve their complaint on defendants. To the extent that plaintiffs would be harmed by the lack of relief from this Court, the injury is due to their own failure of diligence.

Independent candidates for offices to be elected at the general election in November must file petition signatures and declarations of candidacy with the State Board of Elections no later than 7:00 p.m. on the second Tuesday in June—June 9, 2020. Va. Code § 24.2-507. Petition signatures to select presidential electors must be submitted no later than 12:00 p.m. on the seventy-fourth day before the presidential election—August 21, 2020. Va. Code § 24.2-543. Petition circulators could begin collecting those signatures on January 1, 2020. Whatever delay may have resulted in candidates failing to collect sufficient signatures between January 1 and March 12, however, is not the delay that bars relief. Rather, it is the fact that plaintiffs failed to seek an injunction until the day prior to the signature filing deadline—despite knowledge of

social distancing restrictions for eighty-nine days. Compare Executive Order Fifty-One (2020) (Northam) to Va. Code § 24.2-507.

"Laches is an equitable doctrine that precludes relief when a plaintiff has delayed bringing suit to the detriment of the defendant." *Perry v. Judd*, 840 F. Supp. 2d 945, 950 (E.D. Va. 2012). In order to state an adequate affirmative defense under the doctrine of laches, a defendant is required to prove two elements: "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Perry v. Judd*, 471 Fed. Appx. 219, 224 (4th Cir. 2012) (quoting *Costello v. United States*, 365 U.S. 265, 282 (1961)). Both prongs of the laches test have been met here.

First, plaintiffs have demonstrated a clear lack of diligence in their signature collection efforts and in seeking relief.[5] Twenty-three independent or minor party candidates for the United States Congress filed petition signatures to qualify on the November 3, 2020 ballot. Further, plaintiffs could have sought relief from the petition signature requirement any time in the past three months since the date on which the Governor declared the state of emergency due to the COVID-19 pandemic. Rather, plaintiffs chose to abstain from serving defendants until the day before the petition signature deadline for congressional candidates under Virginia Code § 24.2-507.

Second, defendants will clearly be prejudiced by the relief requested by the plaintiffs. Requiring independent candidates to evidence a "significant modicum of support" has repeatedly been found constitutional and characterized as a reasonable regulatory scheme. See, e.g. *Am.*

---

[5] See also *Curtin v. Va. State Bd. of Elections*, 2020 U.S. Dist. LEXIS 98627, *11 (declining to grant plaintiffs' requested relief because, "[w]ith respect to the question of lack of diligence, on March 16, 2020, the disputed COVID-19 Guidance was issued to local registrars and made public on March 17, 2020. Nevertheless, Plaintiffs did not file suit until approximately two months later.").

*Party of Tex. v. White*, 415 U.S. 767, 789 (1974). States have a vested interest in ensuring the integrity of elections and requiring candidates and minor parties to collect signatures from registered voters is an approved method to ensure such integrity. "The Supreme Court has held unequivocally that states may require independent or so-called 'minor party' candidates to demonstrate a *modicum* of *support* among potential voters in order to qualify for a place on the ballot." *Wood v. Quinn*, 104 F. Supp. 2d 611, 615 (E.D. Va. 2000) (internal citations and quotations omitted). There are many justifications for candidates and parties to comply with signature requirements prior to accessing the ballot, including: "the interest, if no other, in avoiding confusion, deception, and even frustration of the democratic process at the general election." *Jenness*, 403 U.S. at 442. Additionally, the Supreme Court of the United States has provided additional justifications for the requirements: "protecting the integrity of political processes from frivolous or fraudulent candidacies, in ensuring that election processes are efficient, in avoiding voter confusion caused by an overcrowded ballot, and in avoiding the expense and burden of run-off elections." *Clements v. Fashing*, 457 U.S. 957, 965 (1982). As federal courts have repeatedly recognized, to entirely eliminate the petition signature requirement as plaintiffs request would cause significant injury to Virginia's elections.

Plaintiffs find themselves in the strikingly similar and unenviable position occupied by a 2012 presidential candidate who failed to gather sufficient signatures to access the ballot and whose late-filed request for relief was barred by laches:

> The equitable doctrine of laches bars the plaintiffs' request for a preliminary injunction. They knew the rules in Virginia many months ago; the limitations on circulators affected them as soon as they began to circulate petitions. The plaintiffs could have challenged the Virginia law at that time. Instead, they waited until after the time to gather petitions had ended and they had lost the political battle to be on the ballot; then, on the eve of the printing of absentee ballots, they decided to challenge Virginia's laws. In essence, they played the game, lost, and then complained that the rules were unfair.

8

*Perry v. Judd*, 840 F. Supp. 2d 945, 949 (E.D. Va. 2012). Here, plaintiffs were aware of the deadline to file congressional petition signatures—June 9. Indeed, plaintiffs were able to begin gathering signatures as early as January 1. Rather than engaging the Court earlier, they delayed and filed for an injunction on the day before those signatures were due. Further, they have not provided evidence to support that they attempted to collect signatures. In short, plaintiffs "played the game, lost, and then complained that the rules were unfair." *Id.* Because, like Perry, plaintiffs delayed unreasonably in seeking the requested preliminary relief from the Court, and because defendants will be prejudiced by this delay, plaintiffs' motion for preliminary injunction/temporary restraining order should be denied.

## II.   Plaintiffs are not entitled to a preliminary injunction

Even if plaintiffs had filed their motion for preliminary injunction/temporary restraining order and served it upon defendants in a timely manner, they fail to demonstrate their entitlement to the "extraordinary remedy" of a preliminary injunction. *Winter*, 555 U.S. at 24. *First*, plaintiffs ask this Court to entirely eliminate the statutory petition signature requirement after the deadline has passed for congressional candidates to file those signatures and in the midst of petition signature gathering for potential presidential electors. But as the Supreme Court has stated, "[c]ommon sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections; 'as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes.'" *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)). *Second*, the proposed relief endangers the Commonwealth's efforts to ensure legality, purity, and fairness of the election, as required under Title 24.2 of the *Virginia Code*.

### A.   Plaintiffs have not established that they are likely to succeed on the merits

### 1.    *The Commonwealth's interests outweigh any injury to plaintiffs.*

Plaintiffs' claim fails under the test created by the Supreme Court in *Anderson v. Celebrezze*, 460 U.S. 780 (1983) and modified in *Burdick v. Takushi*, 504 U.S. 428 (1992). As applied by the Supreme Court in *Burdick*, the *Anderson/Burdick* balancing test requires that a court considering a challenge to a state election law must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights." *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789; citing *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 213-14 (1986)).

Applied here, the Commonwealth's interests clearly outweigh those of plaintiffs. Any alleged injury suffered by plaintiffs was caused by plaintiffs own delay in filing this suit. Plaintiffs have not made any assertion that they have attempted to collect any petition signatures since January 1. At the same time, candidates from the Independent Green Party and Green Party, plaintiffs in this case, collected and filed petition signatures with the Department of Elections before the June 9 filing deadline. Piper Decl. ¶ 10-11.

States have a distinct interest in requiring candidates to show a "significant modicum of support" in order to avoid "confusion, deception, and even frustration of the democratic process at the general election." *Jenness,* 403 U.S. at 442. In the present case, to eliminate the petition signature requirement would potentially (1) allow an unknown number of candidates to qualify to appear on the November 3, 2020 ballot, thus leading to confusion; (2) allow individuals to appear on the November 3, 2020 ballot, regardless of actual party or voter support, thus allowing

deception of voters; and (3) result in voter and candidate confusion thereby resulting in frustration of the democratic process.

"When a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Burdick*, 504 U.S. at 434 (quing *Anderson*, 460 U.S. at 788). This inquiry's rigorousness depends on the severity of the constitutional burden posed by the challenged regulation. *Marcellus v. Virginia State Bd. of Elections*, 849 F.3d 169, 175 (4th Cir. 2017). In light of the fact that the signature requirement is applied to independent candidates alike, and indeed it was applied to major party candidates who were required to submit signatures over two months ago, the requirement is clearly nondiscriminatory.[6] Further, as certain independent and minor party candidates have demonstrated that they have been able to collect petition signatures during the COVID-19 pandemic,[7] the requirement is not unreasonable. Lastly, because the Commonwealth has a well-founded interest in regulating elections in order to ensure the integrity of the election, its interest is sufficient to justify a minimum petition signature requirement.

### 2. *Plaintiffs' argument that there is no procedure for independent candidates to appear on the ballot is entirely without merit.*

Plaintiffs entirely disregard the procedure in place for independent candidates and independent groups of qualified voters to qualify as candidates and to select electors, respectively. Virginia law clearly establishes the methods for those candidates to qualify and those electors to be selected. See Va. Code §§ 24.2-506 and 24.2-543. Those statutory provisions have not changed since January 1, 2020 when candidates could begin to collect petition

---

[6] Va. Code §24.2-522(A).

[7] Piper Decl. ¶ 10.

signatures.[8] If, as a result of the Governor's executive orders, the independent congressional candidates did not feel they could successfully collect petition signatures by the second Tuesday in June, they could have sought judicial intervention at any time in the intervening months.

### 3.    *Plaintiffs' legal authority is inapplicable and outdated.*

Plaintiffs cite decades-old cases from various jurisdictions in which access to the ballot by independent candidates was denied in other jurisdictions. None of those cases are relevant to Virginia's statutory scheme that clearly identifies how independent candidates may qualify to appear on the general election ballot.[9]

Here, Virginia has not eliminated the right of minor party or independent candidates to qualify for office—the qualification requirements are clearly codified and remain the same for minor party and independent candidates just as they do for major party candidates. *See* Va. Code § 24.2-505 et seq. and Va. Code § 24.2-512 et seq., respectively. As noted in a Supreme Court case that plaintiffs cite, *McCarthy v. Briscoe*, "[i]n determining whether to order a candidates name added to the ballot as a remedy for a State's denial of access, a court should be sensitive to

---

[8] To the extent that plaintiffs assert that the executive orders issued in light of the COVID-19 pandemic forbade circulation of petitions and that such prevention hindered their ability to circulate petitions, that is untrue. There is no explicit prohibition in circulating petitions in Executive Order 55 (2020).

[9] See *McCarthy v. Briscoe*, 429 U.S. 1317 (1976) (finding that Texas's entire elimination of the right for independent candidates to qualify for office of president of the United States was unconstitutional; also noting that the applicants in that case submitted affidavits that tended to show that the plaintiff was a serious presidential candidate with substantial support in many states); *McCarthy v. Askew*, 540 F.2d 1254 (5th Cir. 1976) (finding that it was unlawful for minor party candidates to be placed on the ballot while independent candidates could not); *McCarthy v. Noel*, 420 F. Supp. 799 (D.R.I. 1976) (finding that it was unlawful to require independent candidates to file their candidacy documents before major party candidates); *McCarthy v. Tribbitt*, 421 F. Supp. 1193, 1197 (D. Del. 1976) (finding that independent candidates were completely barred from appearing on the ballot); *McCarthy v. Austin*. 423 F. Supp. 990 (W.D. Mich. 1976) (finding that the *absence of a provision* in Michigan law to allow independent candidates to qualify was unlawful).

the State's legitimate interest in preventing 'laundry list' ballots that 'discourage voter participation and confuse and frustrate those who do participate.'" 492 U.S. at 1322 (quoting *Lubin v. Panish*, 415 U.S. 709, 715 (1974)). In the present case, the Commonwealth has a clear interest in protecting against voter confusion, ensuring that candidates have clear guidance as to filing requirements, and upholding the integrity of the electoral process. None of the cases that plaintiffs cite are analogous to the present case, and in no event has the *Virginia Code* infringed upon the plaintiffs' rights in the manner discussed in these cases from Texas, Florida, Rhode Island, Delaware, and Michigan. In fact, the relief that plaintiffs seek could very well lead to the "laundry list" ballots against which the Supreme Court has cautioned.

### 4.    *Defendants do not have the authority to grant the relief plaintiffs request.*

Further, while plaintiffs repeatedly assert that defendants could have established a procedure to grant them the relief they seek (i.e. reducing the relevant petition signature requirements from 10,000 and 1,000 to zero), they fail to assert that there is any statutory authority for defendants to do so. The requirements under the relevant statutory provisions are clearly established by the General Assembly and do not grant either defendants or the Governor the authority to waive them in a time of emergency. While the Governor did postpone the June primary elections from June 9 to June 23, he did so under the authority granted in Virginia Code § 24.2-603.1. That provision grants the authority to "postpone an election by executive order in areas affected by [a declared state of] emergency to a date . . . not to exceed 14 days from the original date of the election," it does not give authority to postpone candidate filings deadlines.

### 5.    *Virginia's statutory scheme will not result in "complete exclusion" of minor party and independent candidates.*

Finally, plaintiffs misconstrue Virginia's statutory scheme with respect to candidates that are permitted to appear on the ballot for the November 3, 2020 general election. Virginia's

current statutory scheme will not result in "complete exclusion" of minor party and independent candidates.[10] With respect to congressional candidates, those candidates who submitted a valid number of petition signatures by June 9, 2020, and who have otherwise met the qualification requirements will appear on the November 3, 2020 ballot. With respect to selected presidential electors, petition signatures for which are not due until August 21, if the nominating groups provide the requisite signatures and relevant paperwork by that date—over 2 months from now—their chosen presidential electors will appear on the ballot. Accordingly, the inclusion of those candidates and electors cannot be squared with plaintiffs' assertion of "complete exclusion" of minor and independent candidates, Mem. in Supp. of Pls.' Mot. for Preliminary Inj. and/or T.R.O., p. 11, or "categorically exclude[ing] all candidates except Republicans and Democrats," *id.* at p. 12.

**B.    Plaintiffs have not shown that they are likely to suffer irreparable harm in the absence of preliminary relief**

The Supreme Court rejected the argument that a preliminary injunction may be entered based "only on a *possibility* of irreparable harm." *Winter*, 555 U.S. at 21 (internal quotation marks omitted; emphasis added). Instead, plaintiffs—like all parties seeking such relief—must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Id.* at 22. Plaintiffs here have not provided evidence with respect to how many petition signatures they have each been able to garner. Accordingly, all of the harms plaintiffs allege here are unsubstantiated and speculative—especially with respect to presidential elector signatures that are not due to be

---

[10] It also bears noting that voters are permitted to cast write-in votes for the candidate of their choosing pursuant to Virginia Code § 24.2-648.

submitted until August 21, 2020—and plaintiffs have not shown that presidential and vice presidential candidates are *likely* to suffer irreparable harm.[11]

### C. The balance of equities and public interest factors independently foreclose a grant of preliminary equitable relief

As the Supreme Court has emphasized, the third and fourth preliminary injunction factors tend to "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). And here, any harm plaintiffs may experience if this Court *denies* a temporary injunction must be balanced against the permanent harm that others could suffer if the Court *grants* one. See *Winter*, 555 U.S. at 24 ("courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief" and "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction" (quotation marks and citation omitted)).

The benefits of a minimum petition signature requirement, as well as a deadline by which such petition signatures must be submitted, are substantial. They include: (i) ensuring that candidates have at least a modicum of support; (ii) reducing voter confusion by a ballot flooded by candidates with unsubstantiated support; (iii) reducing election official and candidate

---

[11] While plaintiffs assert that "[t]he Independent Green Party of Virginia has been completely prevented from gathering petition signatures as a result of the COVID-19 public health emergency and Governor Northam's Executive Orders in response to the emergency," Declaration of Carey Campbell in Support of Plaintiffs' Motion for Preliminary Injunction and/or Temporary Restraining Order (Dkt. 7-2), eleven candidates from the Independent Green Party have submitted petition signatures to date. Piper Decl. ¶ 11. Additionally, contrary to plaintiffs' assertion that "[t]he Green Party of Virginia has been completely prevented from gathering petition signatures as a result of the COVID-19 public health emergency and Governor Northam's Executive Orders in response to the emergency," Declaration of Becker Sidney Smith in Support of Plaintiffs' Motion for Preliminary Injunction and/or Temporary Restraining Order (Dkt. 7-3), at least one candidate who has submitted petition signatures is affiliated with the Green Party of Virginia. *Id.*

confusion regarding which candidates have validly qualified to appear on the ballot; and (iv) ensuring a uniform and orderly election.

If plaintiffs truly felt that they would be harmed by the inability to collect petition signatures, they could have filed their motion for preliminary injunction/temporary restraining order at any time in the past months, including over three months ago when the state of emergency was declared, or two-and-a-half months ago when the stay at home order was issued. During that time, there have been a myriad of suits filed challenging the number of petition signatures required to qualify as a candidate,[12] and plaintiffs have notably stayed silent until this late date in raising any concerns they had about the petition signature requirement.

In contrast, defendants will suffer actual harm if the Court grants the relief that the plaintiffs have requested.

### 1.      *Voter & Election Official Confusion*

Plaintiffs have requested that the petition signature requirement for independent congressional candidates and independent selected presidential electors be lowered from as much as 10,000 to zero. The plaintiffs have not put forth any evidence to suggest how many candidates such a reduction will result in appearing on the November 3, 2020 general election ballot. Thus, *any* qualified individual who filed *any* amount of petition signatures to qualify as a congressional candidate by June 9, 2020 would appear on the ballot and *any* qualified individual in the entire Commonwealth could be placed on the ballot as a presidential elector provided that the requisite

---

[12] See *Faulkner v. Va. Dep't of Elections*, 2020 Va. Cir. LEXIS 70 (Richmond Cir. Ct. March 25, 2020) (petition signature requirement for Republican U.S. Senate candidates); *Lean on McLean v. Showalter* Va. Cir. LEXIS 74 (Richmond Cir. Ct. May 18, 2020) (petition signature requirement for Richmond mayoral candidates); *Alberto v. Cochran*, No. CL20000997 (Roanoke City Cir. Ct. June 4, 2020). (petition signature requirement for candidates for Roanoke City Council; decision issued June 4, 2020); *Richmond for All v. Va. Dep't of Elections*, No. CL20002432 (Richmond City Cir. Ct. June 9, 2020) (petition signature requirement regarding Richmond City Council and school board members).

paperwork is filed by August 21, 2020. This could result in intense confusion among elections officials as they grapple with who is qualified to appear on the ballot. It could also potentially result in a ballot that is pages-long—overwhelming voters with a legion of candidates who have launched themselves into consideration without even the minimum of support that the General Assembly deemed necessary.[13]

### 2.    *Candidate confusion*

Additionally, candidates and groups of individuals wishing to select presidential electors may face confusion regarding who may qualify for the November 3, 2020 general election ballot. Certain independent candidates have already submitted a sufficient number of petition signatures by the June 9, 2020 deadline. Other congressional candidates may have not submitted their petition signatures by the June 9, 2020 deadline because they did not think they would have sufficient signatures to qualify under the statutory requirements and they were unaware of plaintiffs' late-in-time requested relief. In order to avoid chaos and confusion for the November 3, 2020 election, defendants will be required to put forth clear guidance to candidates and individuals wishing to select presidential electors in order to make clear what impact the plaintiffs' belated relief will have on the entirety of individuals wishing to appear throughout the Commonwealth.

### 3.    *Integrity in the electoral process*

---

[13] Plaintiffs cite to the fact that the Vermont legislature deemed it appropriate to allow any candidate to appear on the November general election ballot, regardless of the number of petition signatures obtained. Mem. in Supp. of Pls.' Mot. for Preliminary Inj. and/or T.R.O., p. 11. It is worthwhile to note that such action was taken by the Vermont legislature and the Vermont Governor on March 30, 2020—not by a court. At this time, neither the General Assembly of Virginia nor the Governor of Virginia has even suggested that any independent or minor party candidate gain space on the ballot regardless of support they have been able to demonstrate.

While plaintiffs assert that the relief they request will relieve defendants of the "burden" of validating petition signatures during the "crunch of the election cycle," plaintiffs fail to consider two significant factors. *First*, the "crunch of the election cycle" in this particular case at this juncture is due to plaintiffs' own delay in seeking judicial intervention to modify the number of petition signatures required. Elections officials are dedicated, well-trained public servants who are capable of carrying out their statutory duties. What makes carrying out those duties more difficult is belatedly-filed litigation that throws the electoral process into chaos. *Second*, validating petition signatures is not a "burden" imposed on defendants—it is a duty bestowed upon defendants by the legislature in order to ensure the integrity and legality of elections in the Commonwealth. Ensuring the validity of the ballots that are voted by qualified Commonwealth voters maintains faith in the electoral process and assures that the democratic process runs as the legislature has intended.

\*     \*     \*

The Fourth Circuit has specifically held that delay in bringing a suit forecloses equitable relief, see *Simkins v. Gressette*, 631 F.2d 287, 296 (4th Cir. 1980),[14] and both it and the Supreme Court have repeatedly cautioned against judicial changes "on the eve of the election [that] would seriously disrupt the election process," *Miller v. Brown*, 462 F.3d 312, 321 (4th Cir. 2006); see *Purcell*, 549 U.S. at 4–5. Such admonitions are all the more salient here, where the challenged executive orders were issued almost three months ago but plaintiffs waited until the day before a challenged filing deadline to bring this motion for a preliminary injunction/temporary restraining order and serve plaintiffs. Because judicial intervention at this point would cause voter confusion

---

[14] *Id.* at 296 (denying equitable relief when plaintiffs "chose to wait for more than three years until the eve of the [] elections" reasoning that "[s]uch a delayed suit, if maintained, would clearly cause a major disruption in the election momentarily to begin in South Carolina").

and seriously imperil the integrity of the November 3, 2020 general election, the Court should

stay its hand and deny the requested relief.

## CONCLUSION

The motion for a preliminary injunction should be denied.


Respectfully submitted,


By:   */s/ Carol L. Lewis*

Mark R. Herring                                          Carol L. Lewis (VSB No. 92362)
  *Attorney General*                                       *Assistant Attorney General*

Erin B. Ashwell (VSB No. 79538)
  *Chief Deputy Attorney General*                      Office of the Attorney General
                                                         202 North Ninth Street
Donald D. Anderson (VSB No. 22114)                       Richmond, Virginia 23219
Samuel T. Towell (VSB No. 71512)                         (804) 692-0558 – Telephone
  *Deputy Attorneys General*                             (804) 786-2650 – Facsimile
                                                         clewis@oag.state.va.us
Heather Hays Lockerman (VSB No. 65535)
Marshall H. Ross (VSB No. 29674)
  *Senior Assistant Attorneys General*

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2020, a true and accurate copy of this paper was filed electronically with the Court's CM/ECF system, which will then send a notification of such filing to the parties.

By:   */s/ Carol L. Lewis*
      Carol L. Lewis