IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

THE CONSTITUTION PARTY OF VIRGINIA, et al.,
           Plaintiffs,

v.                                                                           Civil Case No. 3:20-cv-349

VIRGINIA STATE BOARD OF ELECTIONS, et al.,
           Defendants.

## MEMORANDUM ORDER

This matter comes before the Court on the parties' cross-motions for summary judgment. (Dk. Nos. 31, 34.) Virginia law requires individuals who wish to appear on the general election ballot to gather a certain number of signatures by specific deadlines. The plaintiffs—candidates for the Constitution Party of Virginia, Libertarian Party of Virginia, Green Party of Virginia, and Independent Green Party of Virginia seeking to appear on the November, 2020 general election ballot and those parties' members—have sued the Virginia State Board of Elections and its officials to eliminate the petition signature requirement for the November, 2020 general election. They contend that the outbreak of Coronavirus Disease 2019 (COVID-19) and Governor Ralph Northam's response to the outbreak have made it impossible for them to satisfy the signature requirements. Thus, they allege that the petition signature requirement as applied to them for this election cycle violates their First and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983.

For the reasons set forth in this Order, the Court will deny the cross-motions for summary judgment.

## I. BACKGROUND

### A. *Virginia Law*

Virginia law requires individuals seeking national office to obtain a certain number of signatures from qualified voters before appearing on the general election ballot. Va. Code Ann. § 24.2-506(A). An independent or minor party candidate for the U.S. Senate must obtain 10,000 signatures, with signatures from at least 400 qualified voters from each Virginia congressional district. *Id.* § 24.2-506(A)(1). An independent or minor party candidate for the U.S. House of Representatives must obtain 1,000 signatures. *Id.* § 24.2-506(A)(2). An independent or minor party candidate for president or vice president must collect 5,000 signatures, with signatures from at least 200 qualified voters from each congressional district. *Id.* § 24.2-543.

Candidates may begin collecting signatures on January 1. To appear on the 2020 general election ballot, independent and minor party candidates running for the U.S. Senate or House of Representatives must have submitted their signatures by June 9, 2020.[1] Independent or minor party candidates running for president and vice president must submit their signatures by August 21, 2020. Parties may begin collecting petition signatures on January 1, 2020. *Id.* §§ 24.2-506(A), 24.2-543. A qualified person must witness all petition signatures. *Id.* §§ 24.2-506(A), 24.2-543(A). The Board of Elections may invalidate a petition for a number of reasons.

### B. *Virginia's COVID-19 Response*

Since late 2019, COVID-19 has spread rapidly throughout the world. On March 12, 2020, Governor Northam declared a state of emergency in Virginia in response to the outbreak. Over

---

[1] The Court has entered a partial consent decree as to Mitchell P. Bupp, a candidate for the U.S. House of Representatives. (*See* Dk. No. 27.) The consent decree requires Bupp to submit 35 percent of the total petition signatures to appear as a congressional candidate on the general election ballot. The defendants extended the deadline for Bupp to submit those signatures to July 31, 2020.

2

the course of the following weeks, Governor Northam restricted gathering sizes and temporarily closed certain businesses. On March 30, 2020, Governor Northam issued a stay-at-home order, which required all individuals in Virginia to remain in their places of residence subject to certain exceptions through June 10, 2020.

Beginning May 15, 2020, Governor Northam eased the temporary restrictions in most of Virginia, allowing some businesses to reopen with restrictions. Governor Northam has continued this phased approach, allowing more businesses to reopen and increasing the number of people allowed to gather in one place. Indeed, on July 1, 2020, Virginia entered "Phase Three." Among other restrictions, people may now gather in groups of 250 or fewer while maintaining physical distancing requirements.

### C. The Plaintiffs' Efforts

The plaintiffs typically collect petitions during the spring by going door-to-door, attending large public events, or gathering in public spaces. During COVID-19, however, many of the plaintiffs have drastically reduced or ceased their signature collection efforts. As a result, they did not—or anticipate that they will not—collect enough signatures to meet Virginia's signature requirements to appear on the 2020 general election ballot. Indeed, although some plaintiffs have succeeded in collecting a portion of the signatures they need, others have not collected any.

Although the defendants "have not objected to a . . . reduction in signatures or . . . extension of deadlines" in certain circumstances, (Dk. No. 32, at 11), the plaintiffs contend that the defendants are violating their First and Fourteenth Amendment rights pursuant to § 1983 by enforcing the signature requirement at all. The plaintiffs ask the Court to enjoin the defendants from enforcing the signature requirements and declare those requirements unconstitutional as applied to the plaintiffs for the November, 2020 general election.

## II. DISCUSSION[2]

### A. Legal Standard

The First Amendment mandates that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances." U.S. Const. amend. I. "The freedom of speech . . . , which [is] secured by the First Amendment against abridgment by the United States, [is] among the fundamental personal rights and liberties which are secured to all persons by the Fourteenth Amendment against abridgment by a state." *Thornhill v. Alabama*, 310 U.S. 88, 95 (1940).

Thus, issues regarding ballot access implicate "the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively." *Anderson v. Celebrezze*, 460 U.S. 780, 787 (1983). "The right to vote is heavily burdened if that vote may be cast only for major-party candidates at a time when other parties or other candidates are clamoring for a place on the ballot." *Id.* (quotations omitted). Further, excluding candidates from the ballot burdens voters' freedom of association because it hinders their abilities to express views on various issues. *Id.* at 787-88. At

---

[2] Rule 56 of the Federal Rules of Civil Procedure directs courts to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a summary judgment motion, the court must draw all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Nevertheless, if the non-moving party fails to sufficiently establish the existence of an essential element to its claim on which it bears the ultimate burden of proof, the court should enter summary judgment against that party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When faced with cross-motions for summary judgment, a district court is not required to grant judgment as a matter of law. Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993) (internal citations and quotation marks omitted).

the same time, states have an important interest in regulating their elections, even if those regulations affect an individual's right to vote and to associate to some degree. *Id.* at 788.

To resolve a challenge to a state election law, a court "must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate." *Id.* at 789. A court must then "identify and evaluate" the interests the state puts forth to justify the burden the regulation imposes. *Id.* The court must determine the legitimacy and strength of those interests and the extent to which those interests "make it necessary to burden the plaintiff's rights." *Id.* At that point, a court may decide whether the challenged provision is unconstitutional. *Id.*

Courts apply a flexible standard when considering a challenge to a state's election law. *See Burdick v. Takushi*, 504 U.S. 428, 434 (1992). Thus, a court must consider "the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." *Id.* When a law severely restricts those rights, the state must narrowly tailor the law to advance a compelling state interest. *See id.* When the law "imposes only reasonable, nondiscriminatory restrictions upon the First and Fourteenth Amendment rights of voters," the state's interests in regulating elections generally justify the restrictions. *Id.* (quotations omitted).

### B. Application

Just this week, the Fourth Circuit announced that "signature requirements generally are justified by the 'important state interest in requiring some preliminary showing of a significant modicum of support before printing' a candidate's name on the ballot." *Buscemi v. Bell*, No. 19-2355, 2020 WL 3634740, at *7 (4th Cir. July 6, 2020) (published opinion) (quoting *Jenness v. Fortson*, 403 U.S. 431, 442 (1971) (holding that North Carolina's signature requirement presents a modest burden). Indeed, that is the exact interest that the defendants put forward—protecting

the integrity of Virginia's election. The defendants appear to suggest that the Court should apply rational basis scrutiny to this case. But COVID-19 presents unique challenges, and the plaintiffs urge the Court to apply strict scrutiny as a result.

Under the *Anderson-Burdick* framework, the Court must first decide the burden the signature requirements impose in order to determine the level of scrutiny that applies. Given the unusual circumstances of this case, prior decisions regarding the appropriate level of scrutiny have limited application in this context. The Court, therefore, requires a complete factual record to resolve this case. *Cf. Esshaki v. Whitmer*, No. 2:20-CV-10831-TGB, 2020 WL 1910154, at *3-6 (E.D. Mich. Apr. 20, 2020), *granting stay in part*, No. 20-1336, 2020 WL 2185553 (6th Cir. May 5, 2020) (considering the plaintiff's actions during COVID-19 to determine the applicable level of scrutiny). Thus, the plaintiffs' efforts to collect signatures—and their reasons for not doing so—become important to this inquiry. Although the record contains some information regarding those efforts, neither party has put forth sufficient evidence for the Court to rule on the issue at this juncture. Accordingly, the Court declines to enter summary judgment for either party.[3]

### III. CONCLUSION

For the foregoing reasons, the Court DENIES the parties' cross-motions for summary judgment. (Dk. Nos. 31, 34.) The case will proceed to trial as scheduled.

It is so ORDERED.

Let the Clerk send a copy of this Order to all counsel of record.

Date: 10 July 2020
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge

---

[3] The Court takes no position on the appropriate level of scrutiny or the merits of either party's position at this stage.